COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton, Elder, Frank, Humphreys, Clements, Felton,
          Kelsey and McClanahan
Argued at Richmond, Virginia


KENNETH SAMUEL MOSES
                                                          OPINION BY
v.      Record No. 0985-03-3                      JUDGE D. ARTHUR KELSEY
                                                        APRIL 12, 2005
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

        Eric G. Peters, Sr., for appellant.

        Deana A. Malek, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on briefs), for appellee.


        Kenneth Samuel Moses challenges his conviction on two counts of making an obscene

display or exposure in violation of Code § 18.2-387.  Finding no error in the trial court's

application of the statute to this case, we affirm.

                                            I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  That principle

requires us to "'discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and *all fair

inferences to be drawn therefrom*.'"  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d

755, 759 (1980) (emphasis in original and citation omitted).

On August 8, 2001, Moses walked up to a 10-year-old girl at a Kmart. While he masturbated in front of the child, he told her she was "very beautiful." The child saw his hand "through his pants" exercising his penis. Pale with fright, the child later told her mother what happened.

On December 4, 2001, Moses stalked an 11-year-old girl at a Wal-Mart. He made eye-contact with the child and passed her in the aisle several times. As he did so, Moses masturbated with a hand down his pants while looking directly at her. During a brief moment while the child's mother spoke with a friend, Moses approached the girl. He told her she was a "pretty girl" and asked her how her "butt felt." The child ran to her mother confused and upset.

After his arrest, Moses admitted both incidents. According to him, he used a similar *modus operandi* about 40 to 50 times with young girls. It "kinda became a habit." Moses said he would frequent Wal-Mart and Kmart because "[t]hat's where the crowd is and where you can wander around and look at people." "It became a method of letting off steam," he explained, "because I had no other sexual outlet." His underlying motive, Moses said, was the "need to fulfill my sex drive."

After reviewing a sex offender evaluation of Moses, the trial judge found him to be a sexual "predator" and concluded "the least I can do in this case is to try to prevent you from committing these crimes again by incarcerating you." Convicted of two counts of obscene display or exposure under Code § 18.2-387, Moses appeals both convictions.

## II.

At trial, Moses argued that his conduct did not violate Code § 18.2-387 as a matter of law.[1] Such behavior can only offend the statute, he reasoned, if it takes place at least partly in

---

[1] As he concedes on appeal, Moses never challenged the obscene nature of his conduct. Rule 5A:18 precludes him from asserting this challenge for the first time on appeal. No basis exists in this case for invoking the "good cause" or "ends of justice" exceptions to Rule 5A:18.

the nude. A divided panel of our Court agreed with this reasoning and vacated Moses's

convictions under Code § 18.2-387. Moses v. Commonwealth, 43 Va. App. 565, 600 S.E.2d 162

(2004). Having reconsidered this case *en banc*, we now affirm. We come to this conclusion

based upon the common law history of this offense and the literal text of the statute codifying it.

### A. THE COMMON LAW ANTECEDENTS OF CODE § 18.2-387

The common law recognized any "open and notorious lewdness" as an indictable offense.

4 William Blackstone, Commentaries on the Law of England *64 (1769). The offense included

any "grossly scandalous and public indecency." Id. Virginia adopted this common law

restatement. See William W. Hening, The Virginia Justice 431 (4th ed. 1825) (stating that "in

general, all open lewdness, grossly scandalous, is punishable upon indictment at common law");

James M. Matthews, Virginia Criminal Laws 123 (2d ed. 1878) (recognizing crime of "open and

gross lewdness and lasciviousness").[2]

At common law, nudity or near nudity was never the all-important referent. The lewd

nature of the *conduct* itself, if open and notorious, was the main characteristic of the offense.

When state legislatures began codifying various subsets of this common law crime, they did not

abandon its "open and notorious" characteristic. The history of these codification efforts

> leads to one of two possible conclusions about the framers'
> intentions with respect to the regulation of sexual intercourse and
> masturbation. On the one hand, it could be inferred that, because
> the framers so relentlessly prohibited even as little as public
> nudity, it necessarily follows that public intercourse and

---

[2] The "best construction" of a statute codifying common law principles is the one "most near to the reason of the common law, and by the course which that observes in cases of its own." Chichester v. Vass, 5 Va. (1 Call) 83, 102 (1797), quoted in part in Wicks v. Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974). "The reason is that the Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." Wicks, 215 Va. at 276, 208 S.E.2d at 755.

> masturbation would have been regarded as even more odious and even more obviously subject to state regulation. On the other hand, it could be inferred that, although the framers understood that public nudity could be regulated, they apparently understood that public nudity while engaged in intercourse or masturbation could not (or that both were permissible as long as the offenders kept their clothes on). Frankly, given the evidence that we have described about antebellum public morals, statutes, and case law, we find the latter possibility to be remote, to say the least.

State v. Ciancanelli, 45 P.3d 451, 459 (Or. Ct. App.) (*en banc*), petition for review allowed, 58 P.3d 821 (Or. 2002).

It follows that masturbation in a public place, in a manner obvious to all, falls squarely within reach of the common law. See generally Miller v. California, 413 U.S. 15, 25 (1973) (noting that patently offensive "representations or descriptions of masturbation" are "obscene"); State v. Maunsell, 743 A.2d 580, 582-83 (Vt. 1999) (upholding conviction for "open and gross lewdness" where defendant "massag[ed] his genitals through his pants" in a public place); see also United States v. Statler, 121 F. Supp. 2d 925, 927 (E.D. Va. 2000) (observing that "there is little doubt that masturbation in a public bathroom, if proven, fits well within the federal regulation proscribing 'a display or act that is obscene'").

### B. OBSCENE "DISPLAY OR EXPOSURE" UNDER CODE § 18.2-387

Consistent with the common law, Virginia codified a particular type of lewdness offense in Code § 18.2-387. Leaving little doubt as to its intentions, the General Assembly criminalized the "obscene display *or* exposure" of one's person or private parts in a public place. Code § 18.2-387 (emphasis added).

Moses argues the word "exposure" means nudity and "display" means nothing more, making the disjunctive no more than a redundant conjunctive. We find this reasoning inconsistent with first principles of statutory construction. As has been often said: "Words in a statute should be interpreted, if possible, to avoid rendering words superfluous." Cook v.

- 4 -

Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004); Zhou v. Zhou, 38 Va. App. 126, 136, 562 S.E.2d 336, 340 (2002) (observing that "basic canons of statutory construction" exclude interpretations rendering statutory language "superfluous"). "It is the duty of the courts to give effect, if possible, to every word of the written law." Hodges v. Commonwealth, 45 Va. App. 118, 126, 609 S.E.2d 61, 65 (2005) (*en banc*) (citation omitted).

Unless the word "display" is superfluous, it must mean something different from "exposure." If "exposure" can only mean some degree of nudity, then "display" necessarily means something different. And so it does. Among the definitions of "display" in ordinary speech (particularly where, as here, it is used as a noun rather than a verb) is the "demonstration or manifestation of something." American Heritage Dictionary 407 (2d coll. ed. 1985).[3] It is just that definition we give to the word "display" when used in other provisions of the Code.

For example, Code § 18.2-53.1 criminalizes the "display" of a firearm while committing a felony. A robber can effectively "display" a firearm in his pocket even though completely hidden from view. Cromite v. Commonwealth, 3 Va. App. 64, 66-67, 348 S.E.2d 38, 39-40 (1986). The word "display" means "not only the notion of spreading before view or exhibiting to the sight, but also that which is manifested to any of a victim's senses . . . ." Id. (quoting State v. Smallwood, 346 A.2d 164, 167 (Del. 1975)). "Thus a weapon may be manifested to a victim even though he may not see it" because the ability to otherwise discern the weapon's presence is itself a manifestation "just as effective, for the statutory purpose, as putting a gun in plain view." Id.; see also Deshields v. State, 706 A.2d 502, 507 (Del. 1998) (finding that robber "displays" a weapon by putting his hand in his pocket and then handling the weapon); People v. Butts, 580

---

[3] This point demonstrates the irrelevance of cases like State v. Jaime, 236 A.2d 474, 475 (Conn. Cir. Ct. 1967), and State v. Wymore, 560 P.2d 868, 869-70 (Idaho 1977). The indecency laws in those cases only make it unlawful to "expose" the person or private parts — but do not go further and criminalize the "display" of the person or private parts, as does Code § 18.2-387.

- 5 -

N.Y.S.2d 758, 758 (N.Y. App. Div. 1992) (holding that robber displays a weapon by putting his hand inside his jacket and asking victim if it would "make a difference" if he had a gun).

Moses argues that this understanding of display has been foreclosed by prior Virginia cases. The cases he relies upon, however, do not once mention or discuss the word display as used in Code § 18.2-387. See, e.g., Wicks v. Charlottesville, 215 Va. 274, 274-75, 208 S.E.2d 752, 753-54 (1974) (interpreting local ordinance stating that no "person shall *expose* himself"); Noblett v. Commonwealth, 194 Va. 241, 72 S.E.2d 241 (1952) (affirming a conviction on an indictment alleging that the defendant *exposed* himself); Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998) (interpreting the indecent liberties statute, which forbids *exposing* one's sexual or genital parts to a child). They instead focus entirely on the meaning of "expose."[4]

Properly understood, every visible exposure of one's genitals necessarily involves a display of one's genitals. But that does not prove the reverse: that every display necessarily includes an exposure. Hence, a robber can still display a handgun in his pocket while not exposing it to sight. So too a man masturbating in public can still display his "person" or "private parts" while not exposing his penis to sight. We thus reject Moses's claim that the display-or-exposure formulation in Code § 18.2-387 codifies a mere semantic redundancy, a pairing of interchangeable synonyms.

---

[4] Under Virginia law, *stare decisi*s does not "foreclose inquiry" into an issue not previously "raised, discussed, or decided." Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 560, 554 S.E.2d 55, 59 (2001); see also Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 639-40, 593 S.E.2d 568, 574 (2004).

III.

The trial court found Moses's public masturbation to be an obscene "display" of his "person, or the private parts thereof" in violation of Code § 18.2-387.  This conclusion cannot be set aside simply because Moses made this display while fully clothed.

Affirmed.

Benton, J., with whom Fitzpatrick, C.J., and Elder, J., join, dissenting.

The sole issue in this case is whether the evidence was sufficient to prove the offenses charged in the arrest warrant: that on two occasions Kenneth Samuel Moses "did unlawfully in violation of [Code §] 18.2-387 . . . intentionally make an obscene display of [his] person or private parts in a public place or in a place where a child under the age of 18 years and others were present." Because I believe that Code § 18.2-387 codified the common law's understanding of "expose" and "display" to mean without clothes, I do not believe Moses's behavior falls within the purview of the statute. I would, therefore, reverse the misdemeanor convictions.

I.

This issue, whether Moses's conduct fell within the purview of the statute, was clouded in this case from the beginning. At the bench trial, the prosecutor informed the judge as follows in his opening statement:

> [W]e must tell the Court that *the only issue before the Court from the Commonwealth's perspective is does the defendant's conduct constitute indecent exposure of his person* as opposed to his private parts.
>
> Judge, that issue is not decided in the Commonwealth, what does it mean to expose your person. The Commonwealth does have a case from Iowa in 1977. That's the only jurisdiction that we found that provides some insight. I will tell you that that case is contrary to the Commonwealth's position. Iowa said if you don't expose the actual skin itself, there is no indecent exposure. This issue is not decided in the Commonwealth of Virginia. We're going to ask the Court to basically make some law today. And I believe [Moses's attorney] will argue that point.

(Emphasis added).

Moses's attorney responded, in part, as follows:

> Judge, if you're going to make law today, I would submit to you it's going to be bad law. Because what [the prosecutor] is saying is if someone goes up, a male usually, in most cases it's going to be a male, goes up and just scratches at his crotch area because he has an itch to scratch or something like that, that could possibly be considered to be exhibiting something.

And I would submit to the Court that can't be the case. It would just be too easy for too many people to say I saw him grab his genital area. Without -- our position is that without exposure of actual flesh, that that's -- there is no conviction. Just rubbing parts of your clothing should not be a crime. You know, you can't protect people from -- we would submit you can't protect people from everything bad that's going to happen. While this event shouldn't have been done, it wasn't in good taste, it obviously shouldn't have been done, we don't think it meets the meaning of a crime under the law.

At trial, a ten-year-old girl testified that when Moses began a conversation with her in a store he had his hands in his pants as he talked to her. She saw "his hand through his pants" and said his hand was rubbing his penis. She also testified that she did not see the "shape of his penis under his clothes." The eleven-year-old girl testified she saw Moses in another store on another occasion behind a display rack. He was looking at her and "rubbing himself . . . [i]n his private area." She described it as the place "around his waist." She told her mother "that . . . man was adjusting himself."

At the conclusion of the evidence, the prosecutor argued several points, including the assertion "that the statute is contemplating types of displays or exposures where private parts of an individual are not seen. And that's why the statute has person or private parts." Moses's attorney argued that if the statute "taken to mean an obscene display, there certainly are no standards for deciding what a display is[, and in] our opinion -- we would argue in this case that a display is not something you can decide." He also argued that the statute required proof that the defendant "actually exposed some skin."

In pertinent part, the trial judge found the evidence regarding the misdemeanor charges to prove the following conduct:

And this fact finder is going to find that the conduct of Mr. Moses was not acceptable in our community and that it violates the standards of sexual candor. It's clear that he was grabbing his parts when he approached these two young girls in Wal-Mart and Kmart. And that one girl testified he had his hand in his pants as if

- 9 -

he were manipulating himself or masturbating himself. And the other girl testified he was grabbing his parts and looking at her. And that's not the same as if you see a baseball player or football player or somebody else sometimes may grab their parts.

II.

Code § 18.2-387 provides as follows:

> Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor. No person shall be deemed to be in violation of this section for breastfeeding a child in any public place or any place where others are present.

(A)

The evidence failed to prove the conduct charged in the warrant: that Moses displayed his private parts. He outwardly exhibited nothing, not even a visible outline of his private parts. The testimony of both children establishes that they did not see his private parts. Although one child testified that Moses rubbed his penis, she expressly testified that she saw no objective physical manifestation of his penis. She saw his "hands through his pants." The other child was less specific, testifying only he was "rubbing himself . . . [i]n his private area." Addressing Moses's conduct, the trial judge only found that he was "grabbing his parts."

Although, in both instances, the testimony established movement of Moses's hand in his "private area," this evidence failed to prove either "an obscene *display* . . . of his person, or the private parts thereof." Code § 18.2-387 (emphasis added). Absent proof that either of the girls saw or was reasonably likely to have seen Moses's genitals, at least partially uncovered, the evidence failed to prove Moses's behavior came within the conduct charged by the warrant, regardless of the intent with which Moses acted.

- 10 -

(B)

Furthermore, my review of the language of the statute itself and the common law of indecent exposure compels the conclusion that the words "display" and "exposure" as used in Code § 18.2-387 codify the common law and that the statute applies only when the body part in question was exposed without clothing and likely to be seen. See also 1960 Va. Acts, ch. 233 (first enacting Code § 18.1-236, the predecessor statute, which proscribed the same behavior, "obscene display or exposure," as Code § 18.2-387).

The structure of the statute itself establishes that the legislature intended the term "display" to be synonymous with the term "exposure." The legislature used the terms "display or exposure" in the first part of the statute to proscribe the behavior in which an individual may not himself or herself engage, but it used only the term "exposure" in the second half of the statute to set out the behavior in which an individual may not "procure" another to engage. It would be anomalous under the language of this statute to hold that the legislature intended to punish a defendant for engaging in either of two types of behavior himself but to punish him for enticing someone else to engage in only one of those two types of behavior. A court must construe the challenged statute "from its four corners and not by singling out particular words or phrases." Smith v. Commonwealth, 8 Va. App. 109, 113, 379 S.E.2d 374, 376 (1989). "If the several provisions of a statute suggest a potential for conflict or inconsistency, we construe those provisions so as to reconcile them and to give full effect to the expressed legislative intent." Mejia v. Commonwealth, 23 Va. App. 173, 176-77, 474 S.E.2d 866, 868 (1996) (*en banc*). Furthermore, the rule of lenity requires that penal statutes "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983); see also Richardson v. Commonwealth, 25 Va. App. 491, 496, 489 S.E.2d 697, 700 (1997) (holding that "[w]here the

- 11 -

application and enforcement of the criminal law is at issue, any ambiguity shall be resolved against the Commonwealth and in favor of the accused"). Thus, absent a clear legislative intent to the contrary, principles of statutory construction compel a conclusion that the legislature intended a "display" in violation of the statute also requires an "exposure."[5]

Code § 18.2-387 is a codification of the common law, continuing the ban against indecent exposure.[6] The language used by the legislature in enacting the successive code sections that have proscribed indecent exposure fail to support the conclusion that the legislature intended to change the common law when it used the word "display" in its enactment of Code § 18.2-387. Here, the legislature adopted the common law's "precise, well defined meaning" of indecent

---

[5] An analogy between the use of the term "display" in the indecent exposure statute and Code § 18.2-53.1, which proscribes "display[ing]" a firearm in a threatening manner during the commission of certain felonies, is inapt for two reasons.

First, the Virginia cases construing the firearms statute to hold a weapon was displayed to a victim through a sense other than actual sight involved the sense of touch. See, e.g., Cromite v. Commonwealth, 3 Va. App. 64, 67-68, 348 S.E.2d 38, 40 (1986) (involving a robber who approached the victim with his hand in his pocket and "stuck something ['hard'] in his stomach . . . that 'felt . . . like a pistol'"). Here, Moses's conduct did not involve tactile experiences. Rather, they involved only sight of hand movement.

Second, the evils at which the two statutes are directed are entirely different. The presence of a firearm as an aid to a felony may be just as effective even where the firearm is not displayed visually; one need not see a firearm in order to be motivated by fear of the potential harm it represents. See id. In the case of indecent exposure, however, the core of the offense is just that--the exposure itself, coupled with the related shock and embarrassment, People v. Massicot, 118 Cal. Rptr. 2d 705, 711-12 (Cal. Ct. App. 2002), rather than the fear that it represents some intent to do physical harm to the victim. Other statutes criminalize sexual behavior that threatens direct physical contact or harm. As a result, what it means to display a firearm during the commission of a felony has little or no relevance to determining what types of displays violate the indecent exposure statute.

[6] Indeed, Code § 18.2-387 is titled "Indecent exposure." Although the title of a statute is for "informative convenience," Good v. Commonwealth, 155 Va. 996, 999-1000, 154 S.E. 477, 478 (1930), it is of use for interpretative purposes if it "shed[s] light on some ambiguous word or phrase." Trainmen v. Baltimore & Ohio R. Co., 331 U.S. 519, 528-29 (1947). See also Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998) ("not[ing] that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute"). As noted earlier in this opinion, the statutory language suggests a potential for inconsistency that must be reconciled.

- 12 -

exposure. Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974)

(interpreting a local ordinance containing the term "indecently expose").

> "[T]he best construction of [a] statute is[] to construe it as near to
> the reason of the common law as may be . . . ." The reason is that
> the Legislature is presumed to have known and to have had the
> common law in mind in the enactment of a statute. The statute
> must therefore be read along with the provisions of the common
> law, and the latter will be read into the statute unless it clearly
> appears from express language or by necessary implication that the
> purpose of the statute was to change the common law.

Id. (quoting Chichester v. Vass, 5 Va. (1 Call) 83, 102 (1797)). Thus, where the statute has not

expressly or by necessary implication changed the common law, we must assume the common

law definitions apply. See People v. Massicot, 118 Cal. Rptr. 2d 705, 711 (Cal. Ct. App. 2002)

(holding that the common law targeted genital exposure, therefore, in the "absence of express

definitions, . . . we may construe the statute to encompass indecent exposure as it was defined at

common law" (citing 2A J.G. Sutherland, Statutes and Statutory Construction § 50.03, at 435

(Norman J. Singer ed., 4th ed. 1984)). Further, penal statutes "must be strictly construed against

the state and limited in application to cases falling clearly within the language of the statute."

Turner, 226 Va. at 459, 309 S.E.2d at 338.

At common law, a conviction for indecent exposure required proof that the accused

intentionally exposed private parts in a manner that they could reasonably have been seen by

members of the public. Noblett v. Commonwealth, 194 Va. 241, 244-46, 72 S.E.2d 241, 243-44

(1952) (citing definitions indicating the offense is committed where the "'act is seen or is likely

to be seen'" (quoting 67 C.J.S. Obscenity § 5, at 25 (1950))). Indecent exposure statutes from

other states "have generally adopted the common law requirements of the offense of indecent

exposure; to convict someone of indecent exposure, there must be shown a wilful and intentional

exposure of the private parts of the body." 50 Am. Jur. 2d Lewdness, Indecency, and Obscenity

§ 17, at 291-92 (1995). Thus, courts typically have held that "[i]ndecent exposure at common

law consists of exposure in public of the entire person or of parts that should not be exhibited." State v. Chiles, 767 P.2d 597, 599 (Wash. App. 1989); see also Massicot, 118 Cal. Rptr. 2d at 713. Significantly, the Supreme Court of Virginia has recognized a definition of common law "indecent exposure" that requires "'[e]xposure *to sight*.'" Wicks, 215 Va. at 276, 208 S.E.2d at 754 (quoting Black's Law Dictionary 909 (4th ed. 1951) (emphasis added)).

Black's Law Dictionary, which is referenced in Wicks, treats the terms "exposure" and "display" as synonymous, defining "indecent *exposure*" as "[a]n offensive *display* of one's body in public, esp. of the genitals. Cf. Lewdness . . . ." Black's Law Dictionary 773 (7th ed. 1999) (emphases added); see also Noblett, 194 Va. at 245, 72 S.E.2d at 243-44 (referring to exposure as an "exhibition"); Black's, supra, at 595 (defining "exhibitionism" as an "indecent *display* of one's body" (emphasis added)); Massicot, 118 Cal. Rptr. 2d at 712 (noting that conduct sought to be prohibited by common law indecent exposure was "exhibitionism," which it defined as "the *display* of the male genital organs for sexual gratification" (emphasis added)). The Oregon Court affirmed a conviction in State v. Ciancanelli, 45 P.3d 451 (Or. App. 2002), involving an act of masturbation that exposed the person's genitalia. It was in this context that the court discussed the framers' intentions and noted "that eighteenth-and nineteenth-century statutes and case law reflect the widespread -- if not universal -- regulation of public exposure of the genitals." Id. at 459.

Moreover, our adoption of just such a definition of "expose" in Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998) (construing the portion of Code § 18.2-370 that proscribed "knowingly and intentionally 'expos[ing] [one's] sexual or genital parts to any child'"), underscores the conclusion that the General Assembly codified the common law requirement. Noting that the dispositive issue was whether the indecent liberties statute required that the child actually see the perpetrator's genitals, we held,

- 14 -

based on analogy to the common law and the Supreme Court's interpretation of it in <u>Noblett</u> and

<u>Wicks</u>, that actual viewing was not required, but that the evidence had to prove the genitals were

"seen or likely to be seen." <u>Siquina</u>, 28 Va. App. at 698-99, 508 S.E.2d at 352-53.[7]  In doing so,

we conducted an extended analysis of the "origin and contemporary definition of the verb

'expose'":

> "Expose" originated as an adaptation of the Latin verb "exponere,"
> which includes the following definitions:  1) to put or bring out
> into the open, or 2) to put on show or *display*.  5 <u>The Oxford
> English Dictionary</u> 578 (2d ed. 1989); <u>Oxford Latin Dictionary</u> 651
> (1982).  Today, the definition has remained true to its roots.
> <u>Webster's Third New International Dictionary</u> 802 (1981), defines
> "expose" as "to lay open to view."  In <u>Black's Law Dictionary</u> 579
> (6th ed. 1990), "expose" is defined as:  "To show publicly;  *to
> display*; to offer to the public view . . . ."  <u>Black's</u> definition of
> "indecent exposure" is also instructive:  "This term refers to
> exhibition of those private parts which . . . human decency . . .
> require[s] shall be kept covered in [the] presence of others.
> Exposure . . . becomes indecent when it occurs at such time and
> place where [a] reasonable person knows or should know his act
> [may be viewed by] others." <u>Id.</u> at 768.

<u>Siquina</u>, 28 Va. App. at 697-98, 508 S.E.2d at 352 (emphases added); <u>see also</u> <u>Brooker v.

Commonwealth</u>, 41 Va. App. 609, 616, 587 S.E.2d 732, 735 (2003) (adopting <u>Siquina</u>'s

definition of "expose").

 Thus, I would hold that the statutory language and the common law history require that

an accused actually render visible or cause to be seen or likely to be seen the body or the

---

[7] <u>Wicks</u> and <u>Siquina</u> suggest that we need to have an actual display of a person's genitalia in order to find conduct sufficient to convict for indecent exposure under Code § 18.2-387.  The facts in <u>Wicks</u> showed that while the police officer "could not be certain that he had actually seen the defendant's organ because his hand was covering it," the officer did testify that he saw the defendant "holding his hand in front of his trousers and . . . urinating" as he walked.  215 Va. at 275 n.1, 208 S.E.2d at 754 n.1.  Thus, the defendant's conduct supported an inference beyond a reasonable doubt that the defendant's genitalia was actually exposed.  Furthermore, in <u>Siquina</u>, while the child did not see the defendant's genitalia, the child's mother saw the defendant in the bathroom with her child and saw the defendant's erect penis.  28 Va. App. at 697, 508 S.E.2d at 352.  Although <u>Siquina</u> dealt with Code § 18.2-370, taking indecent liberties with a child, the facts also showed that actual exposure of genitalia did occur.

proscribed part. The statute requires proof of some degree of nudity of the body or the private parts of the body under circumstances denoting obscenity and satisfying the other statutory requirements. Cf. Copeland v. Commonwealth, 31 Va. App. 512, 515-16, 525 S.E.2d 9, 10-11 (2000) (holding that evidence of defendant's exposing his genitals and being visibly aroused in a woman's backyard was sufficient to support conviction for indecent exposure); Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000) (holding evidence of defendant's exposing his erect penis and masturbating outside a lighted window sufficient to convict for indecent exposure).

III.

The statute is not a general bar to a person's conducting himself or herself in an indecent or offensive manner. Thus, for example, the statute obviously does not purport to proscribe tight pants or sweaters or other garments that opaquely clothe the body but leave some portion of the population offended due to sensitivity about the tightness of the garment. It does not, by its terms, bar hand gestures that might be considered offensive. Indeed, nothing in the statutory words, when given their meanings in ordinary parlance, bars a person from the mere act of rubbing or "grabbing" himself or herself without proof of more. The statute does not bar indecent conduct that does not expose parts of the body. See, e.g., State v. Jaime, 236 A.2d 474, 475 (Conn. Cir. Ct. 1967) (holding that defendant's "shaking his hand in his pelvic region" and exposing white underpants was insufficient to support a conviction for violating statute prohibiting "wantonly and indecently expos[ing] his person"); State v. Wymore, 560 P.2d 868, 869-70 (Idaho 1977) (holding that a statute barring a person from "publicly expos[ing] his person or his genitals" does not reach obscene gestures and comments where the accused did not expose his private parts).

Moses is serving a ten-year sentence, with four years suspended on various conditions, for the felony of taking indecent liberties with a child pursuant to Code § 18.2-370. Further, the prosecutor obviously selected among the various other statutes under which Moses could have been prosecuted in deciding how to proceed. See, e.g., Code § 18.2-67.3 (proscribing aggravated sexual battery); Code § 18.2-67.4 (proscribing sexual battery); Code § 18.2-370(1) (proscribing indecent liberties with children); see also Code § 18.2-26 (proscribing *attempts* to commit noncapital felonies). See also Jaime, 236 A.2d at 475-76 (holding defendant's "shaking his hand in his pelvic region" and exposing white underpants did not violate indecent exposure statute but might amount to disorderly conduct). If any gaps exist in the types of behavior the various statutes proscribe, it is the job of the legislature, not the courts, to fill those gaps. See, e.g., United States v. Statler, 121 F. Supp. 2d 925, 927 & n.6 (E.D. Va. 2000) (holding "there is little doubt that masturbation in a public bathroom, if proven, fits well within *the federal regulation* proscribing 'a display or act that is obscene'" but emphasizing that the federal regulation is "*broader* than . . . the Virginia indecent exposure statute" because the Virginia statute "requires a display or exposure of parts of one's body [whereas the federal regulation] does not" (emphases added)); see also Ohio Rev. Code Ann. § 2907.09 (2004) (proscribing public indecency, which it defines to include "recklessly" "(1) [e]xpos[ing] his or her private parts, or engag[ing] in masturbation; (2) [e]ngag[ing] in sexual conduct; [or] (3) [e]ngaging in conduct that to an ordinary observer would appear to be sexual conduct or masturbation"); Duvallon v. District of Columbia, 515 A.2d 724, 725 n.1 (D.C. 1986) (analyzing conviction for indecent exposure under statute making it unlawful "for any person or persons to make any obscene or indecent exposure of his or her person, *or* to make any other lewd, obscene, or indecent sexual proposal, *or* to commit any other lewd, obscene, or indecent act" (emphases added)); State v. Ovitt, 535 A.2d 1272, 1275-76 (Vt. 1986) (under statute proscribing "open and gross lewdness and lascivious

- 17 -

behavior" without further defining that offense, holding evidence sufficient to support conviction where defendant masturbated publicly through clothing but did not expose his genitals).

The dispositive issue in this case is whether Moses's behavior constituted a "display or exposure of his person, or the private parts thereof," analogizing to the common law definition of that offense. I would hold it did not, and I would reverse both misdemeanor convictions.

Tuesday                              14th

September, 2004.


Kenneth Samuel Moses,                                          Appellant,

 against          Record No. 0985-03-3
                 Circuit Court Nos. CR02014083-00, CR02014116-00
                   and CR02014116-01

Commonwealth of Virginia,                                      Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner,
Frank, Humphreys, Clements, Felton, Kelsey and McClanahan


On August 23, 2004 came the appellee, by the Attorney General of Virginia, and filed a

petition praying that the Court set aside the judgment rendered herein on August 10, 2004, and

grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate

entered herein on August 10, 2004 is stayed pending the decision of the Court *en banc*, and the

appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as

an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously

rendered by the Court in this matter.  It is further ordered that the appellee shall file with the

clerk of this Court twelve additional copies of the appendix previously filed in this case.


A Copy,

Teste:

                                          Cynthia L. McCoy, Clerk
By:

                                          Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Kelsey
Argued at Salem, Virginia


KENNETH SAMUEL MOSES
                                                        OPINION BY
v.       Record No. 0985-03-3                JUDGE JAMES W. BENTON, JR.
                                                        AUGUST 10, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                           J. Leyburn Mosby, Jr., Judge

            Eric G. Peters, Sr., for appellant.

            Deana A. Malek, Senior Assistant Attorney General (Jerry W.
            Kilgore, Attorney General, on brief), for appellee.


        The trial judge convicted Kenneth Samuel Moses of the felony of taking indecent

liberties with a child, Code § 18.2-370, and two misdemeanor counts of making an obscene

display or exposure of his person in violation of Code § 18.2-387. Moses contends the evidence

was insufficient to support the misdemeanor convictions. We agree, and we reverse both

misdemeanor convictions.

                                              I.

        The evidence proved a ten-year-old girl was in a department store with her mother and

her brother in August of 2001, when she saw Moses walking among the aisles. Later, in the

check-out line, Moses began a conversation with the girl. Moses told the girl she was very

beautiful and told her he thought other people must have said this to her. The girl testified that

Moses had his hands in his pants as he talked to her. She saw "his hand through his pants" and

said his hand was rubbing his penis. She also testified that she did not see the "shape of his penis

under his clothes."  When the girl's mother arrived, the girl left the store with her mother and

brother.  Outside the store, the girl reported the incident to her mother.

In December of 2001, an eleven-year-old girl was in another department store with her

mother.  The girl saw Moses behind a display rack looking at her and "rubbing himself . . . [i]n

his private area."  She told her mother "that . . . man was adjusting himself."  After her mother

paid for merchandise, she momentarily walked away from the girl.  Moses approached the girl

when she was alone near the entrance and "told [her] that [she] was a pretty little girl and . . .

asked how [her] butt felt."  Later, in the parking lot, the girl reported the conversation to her

mother.

The trial judge convicted Moses of two offenses of violating Code § 18.2-387.[1]

II.

Code § 18.2-387 provides as follows:

> Every person who intentionally makes an obscene display or
> exposure of his person, or the private parts thereof, in any public
> place, or in any place where others are present, or procures another
> to so expose himself, shall be guilty of a Class 1 misdemeanor.  No
> person shall be deemed to be in violation of this section for
> breastfeeding a child in any public place or any place where others
> are present.

The evidence proved Moses's conduct was indecent, but we hold that the evidence failed

to prove either "an obscene *display* . . . of his person, or the private parts thereof" or "an obscene

. . . *exposure* of his person, or the private parts thereof."  Code § 18.2-387 (emphases added).

Our review of the common law of indecent exposure and the language of the statute itself

compels the conclusion that the words "display" and "exposure" as used in Code § 18.2-387 are

---

[1] We do not describe the evidence supporting the felony conviction because those events occurred on a separate occasion and are not germane to the issues on this appeal.  Furthermore, because Moses does not challenge the sufficiency of the evidence to prove he acted intentionally, we also need not review as an issue on appeal that aspect of the misdemeanor convictions.

- 2 -

synonymous and that the statute applies only when the body part in question was clearly visible without clothing or was exposed without clothing and likely to be seen.[2] See also 1960 Va. Acts, ch. 233 (first enacting Code § 18.1-236, the predecessor statute, which proscribed the same behavior, "obscene display or exposure," as Code § 18.2-387).

"The term 'indecent exposure' had a precise, well defined meaning at common law . . . ." Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974) (interpreting a local ordinance containing the term "indecently expose").

> "[T]he best construction of [a] statute is[] to construe it as near to the reason of the common law as may be . . . ." The reason is that the Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.

Id. (quoting Chichester v. Vass, 5 Va. (1 Call.) 83, 102 (1797)); see People v. Massicot, 118 Cal. Rptr. 2d 705, 711 (Cal. Ct. App. 2002) (holding that in the "absence of express definitions, . . . we may construe the statute to encompass indecent exposure as it was defined at common law" (citing 2A J.G. Sutherland, Statutes and Statutory Construction, § 50.03, at 435 (Norman J. Singer ed., 4th ed. 1984))). Further, penal statutes "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). Both the history of the common law offense of indecent exposure and the language used by the legislature in enacting the successive code sections that have proscribed indecent exposure fail to support the conclusion

---

[2] No evidence established that Moses's covered penis was visible in outline form through his clothing in either of the incidents at issue. Thus, we need not consider whether such behavior would constitute a "display or exposure" in violation of Code § 18.2-387.

that the legislature intended to change the common law when it used the word "display" in its enactment of Code § 18.2-387.

At common law, indecent exposure involved intentionally exposing one's private parts in a manner that same could reasonably have been seen by members of the public.[3] Noblett v. Commonwealth, 194 Va. 241, 244-46, 72 S.E.2d 241, 243-44 (1952) (citing definitions indicating the offense is committed where the "'act is seen or is likely to be seen'" (quoting 67 C.J.S. Obscenity § 5, at 25 (1950))). The Supreme Court of Virginia has recognized a definition of common law "indecent exposure" that requires "'[e]xposure *to sight*.'" Wicks, 215 Va. at 276, 208 S.E.2d at 754 (quoting Black's Law Dictionary 909 (4th ed. 1951) (emphasis added)). Black's Law Dictionary, which is referenced in Wicks, treats the terms "exposure" and "display" as synonymous, defining "indecent *exposure*" as "[a]n offensive *display* of one's body in public, esp. of the genitals. Cf. Lewdness . . . ." Black's Law Dictionary 773 (7th ed. 1999) (emphases added); see also Noblett, 194 Va. at 245, 72 S.E.2d at 243-44 (referring to exposure as an "exhibition"); Black's, supra, at 595 (defining "exhibitionism" as an "indecent *display* of one's body" (emphasis added)); Massicot, 118 Cal. Rptr. 2d at 712 (noting that conduct sought to be prohibited by common law indecent exposure was "exhibitionism," which it defined as "the *display* of the male genital organs for sexual gratification" (emphasis added)).

We adopted just such a definition of "expose" in Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998), where we construed the portion of Code § 18.2-370, proscribing "knowingly and intentionally 'expos[ing] [one's] sexual or genital parts

---

[3] Indecent exposure "[s]tatutes have generally adopted the common law requirements of the offense of indecent exposure; to convict someone of indecent exposure, there must be shown a wilful and intentional exposure of the private parts of the body." 50 Am. Jur. 2d Lewdness, Indecency, and Obscenity § 17, at 291-92 (1995). Thus, courts typically have held that "[i]ndecent exposure at common law consists of exposure in public of the entire person or of parts that should not be exhibited." States v. Chiles, 767 P.2d 597, 599 (Wash. App. 1989); see also Massicot, 118 Cal. Rptr. 2d at 713.

to any child.'"  Noting that the dispositive issue was whether the indecent liberties statute required that the child actually see the perpetrator's genitals, we held, based on analogy to the common law and the Supreme Court's interpretation of it in <u>Noblett</u> and <u>Wicks</u>, that actual viewing was not required, but that the evidence had to prove the genitals were "seen or likely to be seen."  <u>Siquina</u>, 28 Va. App. at 698-99, 508 S.E.2d at 352-53.  In doing so, we conducted an extended analysis of the "origin and contemporary definition of the verb 'expose'":

> "Expose" originated as an adaptation of the Latin verb "exponere," which includes the following definitions:  1) to put or bring out into the open, or 2) to put on show or *display*.  5 <u>The Oxford English Dictionary</u> 578 (2d ed. 1989); <u>Oxford Latin Dictionary</u> 651 (1982).  Today, the definition has remained true to its roots.  <u>Webster's Third New International Dictionary</u> 802 (1981), defines "expose" as "to lay open to view."  In <u>Black's Law Dictionary</u> 579 (6th ed. 1990), "expose" is defined as:  "To show publicly; *to display*; to offer to the public view . . . ."  <u>Black's</u> definition of "indecent exposure" is also instructive:  "This term refers to exhibition of those private parts which . . . human decency . . . require[s] shall be kept covered in [the] presence of others.  Exposure . . . becomes indecent when it occurs at such time and place where [a] reasonable person knows or should know his act [may be viewed by] others."  <u>Id.</u> at 768.

<u>Id.</u> at 697-98, 508 S.E.2d at 352 (emphases added); <u>see also</u> <u>Brooker v. Commonwealth</u>, 41 Va. App. 609, 616, 587 S.E.2d 732, 735 (2003) (adopting <u>Siquina</u>'s definition of "expose").

The structure of the statute itself also fails to establish that the legislature did not intend the term "display" to be synonymous with the term "exposure."  The legislature used the terms "display or exposure" in the first part of the statute to proscribe the behavior in which an individual may not himself or herself engage, but it used only the term "exposure" in the second half of the statute to set out the behavior in which an individual may not "procure" another to engage.  It would be anomalous under the language of this statute to hold that the legislature intended to punish a defendant for engaging in either of two types of behavior himself but to punish him for enticing someone else to engage in only one of those two types of behavior.  A

- 5 -

court must construe the challenged statute "from its four corners and not by singling out particular words or phrases." Smith v. Commonwealth, 8 Va. App. 109, 113, 379 S.E.2d 374, 376 (1989). "If the several provisions of a statute suggest a potential for conflict or inconsistency, we construe those provisions so as to reconcile them and to give full effect to the expressed legislative intent." Mejia v. Commonwealth, 23 Va. App. 173, 176-77, 474 S.E.2d 866, 868 (1996) (*en banc*). "[A] statute should never be construed so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). Absent a clear legislative intent to the contrary, principles of statutory construction compel us to conclude the legislature intended that a "display" in violation of the statute also requires an "exposure."[4]

Thus, by its plain terms, the statute requires that the accused actually render visible or cause to be seen or likely to be seen the body or the proscribed part. The statute requires proof of some degree of nudity of the body or the private parts of the body under circumstances

---

[4] An analogy between the use of the term "display" in the indecent exposure statute and Code § 18.2-53.1, which proscribes "display[ing]" a firearm in a threatening manner during the commission of certain felonies, is inapt for two reasons.

First, the Virginia cases construing the firearms statute to hold a weapon was displayed to a victim through a sense other than actual sight involved the sense of touch. See, e.g., Cromite v. Commonwealth, 3 Va. App. 64, 67-68, 348 S.E.2d 38, 40 (1986) (involving a robber who approached the victim with his hand in his pocket and "stuck something ['hard'] in his stomach . . . that 'felt . . . like a pistol'"). Here, Moses's conduct did not involve tactile experiences. Rather, they involved only vague visual manifestations not proved sufficient to show even the outline of a penis beneath his trousers. See *supra* footnote 2.

Second, the evils at which the two statutes are directed are entirely different. The presence of a firearm as an aid to a felony may be just as effective even where the firearm is not displayed visually; one need not see a firearm in order to be motivated by fear of the potential harm it represents. See Cromite, 3 Va. App. at 67-68, 348 S.E.2d at 40. In the case of indecent exposure, however, the core of the offense is just that--the exposure itself, coupled with the related shock and embarrassment, Massicot, 118 Cal. Rptr. 2d at 711-12, rather than the fear that it represents some intent to do physical harm to the victim. Other statutes criminalize sexual behavior that threatens direct physical contact or harm. As a result, what it means to display a firearm during the commission of a felony has little or no relevance to determining what types of displays violate the indecent exposure statute.

- 6 -

denoting obscenity and satisfying the other statutory requirements.[5] Cf. Copeland v. Commonwealth, 31 Va. App. 512, 515-16, 525 S.E.2d 9, 10-11 (2000) (holding that evidence of defendant's exposing his genitals and being visibly aroused in a woman's backyard was sufficient to support conviction for indecent exposure); Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000) (holding evidence of defendant's exposing his erect penis and masturbating outside a lighted window sufficient to convict for indecent exposure).

III.

The evidence proved that Moses did not expose his genitalia or private parts to the children on either occasion.[6] The evidence proved Moses was fully clothed and exposed no part of his body as proscribed by the statute. Cf. Hart v. Commonwealth, 18 Va. App. 77, 80, 441 S.E.2d 706, 708 (1994) (holding that a man wearing "a skimpy G-string which covered only his penis and anus, leaving his pubic area and buttocks exposed," violated the statute by intentionally exposing in an obscene manner his pubic area and buttocks). In both instances, Moses rubbed his "private parts" beneath his clothing while looking at the girls and while in a position where the girls could see his conduct. In neither instance, however, did he cause to be visible any part of his body that he rubbed. One girl testified that she did not see the shape of his

---

[5] See *supra* footnote 2.

[6] Citing Wicks and Siquina, the dissent suggests that we do not need to have an actual display of a person's genitalia in order to find conduct sufficient to convict for indecent exposure under Code § 18.2-387. The facts in Wicks showed, however, that while the police officer "could not be certain that he had actually seen the defendant's organ because his hand was covering it," the officer did testify that he saw the defendant "holding his hand in front of his trousers and . . . urinating" as he walked. 215 Va. at 275 n.1, 208 S.E.2d at 754 n.1. Thus, the defendant's conduct supported an inference beyond a reasonable doubt that the defendant's genitalia was actually exposed. Furthermore, in Siquina, while the child did not see the defendant's genitalia, the child's mother saw the defendant in the bathroom with her child and saw the defendant's erect penis. 28 Va. App. at 697, 508 S.E.2d at 352. Although Siquina dealt with Code § 18.2-370, taking indecent liberties with a child, the facts also showed that actual exposure of genitalia did occur.

- 7 -

penis as he rubbed it. The other girl testified only that he was standing behind a display rack "rubbing . . . his private area." She, likewise, did not see his genitalia.

The statute is not a general bar to a person's conducting himself or herself in an indecent or offensive manner. Thus, for example, the statute obviously does not purport to proscribe tight pants or sweaters or other garments that opaquely clothe the body but leave some portion of the population offended due to sensitivity about the tightness of the garment. It does not, by its terms, bar hand gestures that might be considered offensive. Indeed, nothing in the statutory words, when given their meanings in ordinary parlance, bars a person from the mere act of rubbing himself or herself without proof of more. The statute bars "obscene" conduct, not indecent conduct that does not expose parts of the body. See, e.g., State v. Jaime 236 A.2d 474, 475 (Conn. Cir. Ct. 1967) (holding that defendant's "shaking his hand in his pelvic region" and exposing white underpants was insufficient to support a conviction for violating statute prohibiting "wantonly and indecently expos[ing] his person"); State v. Wymore, 560 P.2d 868, 869-70 (Idaho 1977) (holding that a statute barring a person from "publicly expos[ing] his person or his genitals" does not reach obscene gestures and comments where the accused did not expose his private parts).

This case is not about a disagreement over whether Moses's acts were rude, disgusting, or indecent. It also is not about freeing a pedophile. Moses is serving a ten-year sentence, with four years suspended on various conditions, for the felony of taking indecent liberties with a child pursuant to Code § 18.2-370. Further, the prosecutor obviously selected among the various other statutes under which Moses could have been prosecuted in deciding how to proceed. See, e.g., Code § 18.2-67.3 (proscribing aggravated sexual battery); Code § 18.2-67.4 (proscribing sexual battery); Code § 18.2-370(1) (proscribing indecent liberties with children); see also Code § 18.2-26 (proscribing *attempts* to commit noncapital felonies); Jaime, 236 A.2d at 475-76

- 8 -

(holding defendant's "shaking his hand in his pelvic region" and exposing white underpants did not violate indecent exposure statute but might amount to disorderly conduct).  If any gaps exist in the types of behavior the various statutes proscribe, it is the job of the legislature, not the courts, to fill those gaps.  See, e.g., United States v. Statler, 121 F. Supp. 2d 925, 927 & n.6 (E.D. Va. 2000) (holding "there is little doubt that masturbation in a public bathroom, if proven, fits well within *the federal regulation* proscribing 'a display or act that is obscene'" but emphasizing that the federal regulation is "*broader* than . . . the Virginia indecent exposure statute" because the Virginia statute "requires a display or exposure of parts of one's body [whereas the federal regulation] does not" (emphases added)); see also Ohio Rev. Code Ann. § 2907.09 (2004) (proscribing public indecency, which it defines to include "recklessly" "(1) [e]xpos[ing] his or her private parts, or engag[ing] in masturbation; (2) [e]ngag[ing] in sexual conduct; [or] (3) [e]ngaging in conduct that to an ordinary observer would appear to be sexual conduct or masturbation"); Duvallon v. District of Columbia, 515 A.2d 724, 725 n.1 (D.C. 1986) (analyzing conviction for indecent exposure under statute making it unlawful "for any person or persons to make any obscene or indecent exposure of his or her person, *or* to make any other lewd, obscene, or indecent sexual proposal, *or* to commit any other lewd, obscene, or indecent act" (emphases added)); State v. Ovitt, 535 A.2d 1272, 1275-76 (Vt. 1986) (under statute proscribing "open and gross lewdness and lascivious behavior" without further defining that offense, holding evidence sufficient to support conviction where defendant masturbated publicly through clothing but did not expose his genitals).

Thus, the dispositive issue in this case is whether Moses's behavior constituted "an obscene display . . . of his person, or the private parts thereof" or "an obscene . . . exposure of his person, or the private parts thereof," analogizing to the common law definition of that offense. Absent proof that either of the girls saw or was reasonably likely to have seen Moses's genitals,

at least partially uncovered, the evidence was insufficient to support the convictions under the particular statute at issue in this case, regardless of the intent with which Moses acted.[7] It is our job to interpret and apply the laws the legislature has enacted.[8] For these reasons, we reverse both misdemeanor convictions.

Reversed and dismissed.

---

[7] Although the dissent contends otherwise, our present holding, in conjunction with existing case law, does not compel the conclusion that a female swimmer wearing a thong bathing suit violates the indecent exposure statute whereas a man masturbating beneath his trench coat does not. The indecent exposure statute requires both a proscribed act and a particular intent. Our decision in Hart involved not a swimmer at the beach but a man in an office supply store who wore Velcro shorts which he dropped to reveal a "real skimpy," "form-fitting" "G-string" that showed the outline of his penis and provided no coverage for his remaining pubic area and buttocks. 18 Va. App. at 78, 441 S.E.2d at 706-07. We held Hart violated the statute not only because his choice of attire "constituted 'an exposure of his person, or the private parts thereof,'" by exposing his groin and buttocks, but also because his behavior, including his suggestive statements to the store clerk about his G-string and shorts, his delay in putting his shorts back on, and his return to the store wearing the same shorts six days later, indicated an intent to make "an obscene display or exposure." Id. at 79-80, 441 S.E.2d at 707-08.

Thus, under Hart, a sunbather wearing a G-string swim suit at the beach might violate the "exposure" portion of the statute, but more would be required to prove she acted with the requisite intent. In the case of a man masturbating in obvious fashion beneath his trench coat without exposing his person or private parts to public view, just the reverse would likely be true--the evidence would establish that his behavior was obscene but would not establish the requisite exposure of his person or private parts. The possible existence of a gap in the statutes proscribing obscene and lewd behavior does not permit the judiciary to expand the scope of the offense of indecent exposure beyond its statutory and common law bounds.

[8] If, as the dissenter posits, Moses's case involves "a pedophile['s] masturbating in front of a young child as he tries to talk her into being his next victim," that was a matter for the Commonwealth to consider in determining what offenses to charge. The failure to charge under the appropriate statute does not justify our upholding Moses's convictions for two counts of an offense the evidence does not prove he committed.

- 10 -

Kelsey, J., dissenting.

## I.

On August 4, 2001, the defendant — an admitted pedophile — approached a 10-year-old girl at a Wal-Mart.[9] The defendant came up to the girl and said: "You're a real pretty girl." She said "thank you" and walked away. He followed. "You look a lot like my granddaughter," he added. The defendant then asked her if she would "like to see a picture" of his granddaughter. Without waiting for a response, he showed her a photo of a young woman performing oral sex with a man. "Do you want to do it?" the defendant asked. "I'll give you $20." The girl ran to her mother, crying hysterically.

On August 8, 2001, the defendant walked up to a 10-year-old girl at a Kmart. While he masturbated in front of the child, he told her she was "very beautiful." The child saw his hand "through his pants" exercising his penis. Pale with fright, the child later told her mother what happened.

On December 4, 2001, the defendant stalked an 11-year-old girl at a Wal-Mart. He made eye-contact with the child and passed her in the aisle several times. As he did so, the defendant masturbated with a hand down his pants while looking directly at her. During a brief moment while the child's mother spoke with a friend, the defendant approached the girl. He told her she was a "pretty girl" and asked her how her "butt felt." The child ran to her mother confused and upset.

---

[9] On appeal, we should review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Seaton v. Commonwealth, 42 Va. App. 739, 743, 595 S.E.2d 9, 11 (2004) (citation omitted).

- 11 -

After his arrest, the defendant admitted he showed the lewd photo to the first child and solicited oral sex from her. He also admitted the other two incidents. According to him, he used a similar *modus operendi* about 40 to 50 times with young girls. It "kinda became a habit." He showed the same photo to "probably half a dozen" young girls. This pattern of behavior, he confessed, began about four months earlier when for "some unknown reason" he approached a young girl and told her "she was very attractive." The girl walked away after he offered to "take her back to [his] cabin" in the mountains.

The following week he stayed at a friend's home. "I found myself walking in my sleep," he recounted, and slept-walked into "my buddy's daughter's bedroom." Thereafter, the defendant began to frequent Wal-Mart and Kmart because "[t]hat's where the crowd is and where you can wander around and look at people." "It became a method of letting off steam," he explained, "because I had no other sexual outlet." He went to several public libraries for the same purpose. His underlying problem, the defendant said, was the "need to fulfill my sex drive."[10]

After reviewing the defendant's sex offender evaluation, the trial judge found the defendant to be a sexual "predator" and concluded that "the least I can do in this case is to try to prevent you from committing these crimes again by incarcerating you." Convicted of one count of taking indecent liberties with a child under Code § 18.2-370 and two counts of indecent

---

[10] I disagree with the majority that this contextual evidence has no legal relevance. It has direct bearing for it establishes the defendant's *mens rea* — the subjective intent underlying his criminal conduct. See, e.g., Hart v. Commonwealth, 18 Va. App. 77, 80, 441 S.E.2d 706, 707-08 (1994) (holding that, under Virginia's indecency statute, the defendant's statements to the victim "aided in establishing his intent in acting as he did"). These facts also refute the implicit suggestion that, perhaps, the defendant was merely "adjusting himself" (as that phrase was used by an 11-year old girl speaking to her mother) or the express assertion made by defendant's counsel on appeal that, maybe, the defendant was scratching a patch of "poison ivy." In finding the defendant to be a sexual "predator," the trial court no doubt rejected such suggestions.

display or exposure under Code § 18.2-387, the defendant appeals only his latter two convictions.

## II.

The majority opinion holds that the defendant's public masturbation, *as a matter of law*, does not violate Code § 18.2-387. Such behavior can only offend the statute, the majority reasons, if the masturbation takes place at least partly in the nude. Without explanation, however, the opinion leaves open the possibility (one inconsistent with its holding) that the statute may also forbid fully clothed masturbation where "the outline form" of the penis can be discerned "through his clothing." *Ante* at 3 n.2 & 6 n.5 (cross-referencing n.2). I find both the holding, as well as its caveat, to be just the kind of "curious, narrow, or strained construction" of a statute, Melanson v. Commonwealth, 261 Va. 178, 183, 539 S.E.2d 433, 435 (2001), that we should faithfully avoid.

Under the majority's interpretation, a man sitting on a boardwalk bench at the beach could masturbate under his trench coat — in a way that brazenly reveals what he is doing to every passerby — and not display or expose his "person" under Code § 18.2-387. But a swimmer wearing a thong bathing suit arguably would. See, e.g., Hart v. Commonwealth, 18 Va. App. 77, 80, 441 S.E.2d 706, 708 (1994) (exposure of "buttocks" and "pubic area," while wearing a "G-string" swim suit, violates indecent exposure statute).[11] In the first example, the

---

[11] The defendant in Hart raised two issues on appeal, arguing that "the evidence was insufficient to show (1) that his behavior constituted 'an exposure of his person, or the private parts thereof' and (2) that his behavior was obscene." Id. at 78, 441 S.E.2d at 706. Hart answered the first question by pointing out that the G-string "covered" the defendant's "penis and anus" but left his "pubic area and buttocks exposed" to view. Id. at 80, 441 S.E.2d at 708. Hart answered the second question, whether that exposure was obscene, by finding it sufficient that the defendant made crude remarks alluding to sex. Id. at 80, 441 S.E.2d at 708 (finding obscene the defendant's statement to a saleswoman "What do you think of the whole picture?"

- 13 -

man displays sexual activity obvious to all.  In the second, the swimmer displays no sexual activity of any nature.  Yet the swimmer, not the masturbator, has a greater risk of violating the display-or-expose element of Code § 18.2-387.[12]

Equally incongruent is that the children in our case actually saw the defendant masturbating.  He was, after all, standing right in front of them.  His obscene display was considerably more communicative than the statute requires.  Under existing precedent, indecent exposure in a public place can occur even if no one in fact observes it — so long as it could have been observed had someone been looking.  See Wicks v. Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 754-55 (1974) (noting that, if the exposure likely could be seen, it is irrelevant "whether actually seen by a single person or by several" because it still "is an act of 'gross and open indecency, injurious to public morals'" (citation omitted)); Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998) (holding that, under the indecent liberties statute, "whether an object is actually seen by its intended audience is irrelevant to whether that object has been exposed").  Under the majority view, therefore, the statute applies to a man who exposes himself only to himself, but not to a man who flagrantly masturbates in plain view of another.

---

and his comment that "he liked his velcro shorts because they 'gave easy access to women who wanted him'").

[12] It entirely misses the point to observe, *ante* at 10 n.7, that to convict the scantily clad swimmer he must also do or say something obscene.  The statute requires both:  the act of "display or exposure" and circumstances allowing a factfinder to deem that act obscene.  *Ante* 3, n.3.  In my example, I focus solely on the act, not its lewd characteristics.  However, if this case required an examination of the obscenity aspect of the statute, I would agree with the majority that Hart found this element proved by the defendant's "suggestive statements" about his "G-string and shorts."  See *Ante* at 10 n.7.

- 14 -

These interpretative anomalies cannot be squared with either the historical context or literal text of Code § 18.2-387. The common law recognized any "open and notorious lewdness" as an indictable offense. 4 William Blackstone, Commentaries on the Law of England *64 (1769). The offense included any "grossly scandalous and public indecency." Id. Virginia adopted this common law restatement. See William W. Hening, The Virginia Justice 431 (4th ed. 1825) (stating that "in general, all open lewdness, grossly scandalous, is punishable upon indictment at common law"); James M. Matthews, Virginia Criminal Laws 123 (2d ed. 1878) (recognizing crime of "open and gross lewdness and lasciviousness").

Nudity or near nudity is not, and never has been, the all-important referent. The lewd nature of the *conduct* itself, if open and notorious, was the main characteristic of the offense. When state legislatures began codifying various subsets of this common law crime, they did not abandon its "open and notorious" characteristic. The history of these codification efforts

> leads to one of two possible conclusions about the framers' intentions with respect to the regulation of sexual intercourse and masturbation. On the one hand, it could be inferred that, because the framers so relentlessly prohibited even as little as public nudity, it necessarily follows that public intercourse and masturbation would have been regarded as even more odious and even more obviously subject to state regulation. On the other hand, it could be inferred that, although the framers understood that public nudity could be regulated, they apparently understood that public nudity while engaged in intercourse or masturbation could not (or that both were permissible as long as the offenders kept their clothes on). Frankly, given the evidence that we have described about antebellum public morals, statutes, and case law, we find the latter possibility to be remote, to say the least.

State v. Ciancanelli, 45 P.3d 451, 459 (Or. Ct. App.) (*en banc*), petition for review allowed, 58 P.3d 821 (Or. 2002).

It follows that open and notorious masturbation in a public place, in a manner obvious to all, falls squarely within reach of the common law. See generally Miller v. California, 413 U.S. 15, 25 (1973) (noting that patently offensive "representations or descriptions of masturbation"

- 15 -

are "obscene"); State v. Maunsell, 743 A.2d 580, 582-83 (Vt. 1999) (upholding conviction for "open and gross lewdness" where defendant "massag[ed] his genitals through his pants" in a public place); see also United States v. Statler, 121 F. Supp. 2d 925, 927 (E.D. Va. 2000) (observing that "there is little doubt that masturbation in a public bathroom, if proven, fits well within the federal regulation proscribing 'a display or act that is obscene'").

Consistent with this view, Virginia codified a particular type of common law lewdness offense in Code § 18.2-387. Leaving little doubt as to its intentions, the General Assembly criminalized the "obscene display *or* exposure" of one's "person, *or* the private parts thereof" in a public place. Id. (emphasis added). As has been often said: "Words in a statute should be interpreted, *if possible*, to avoid rendering words superfluous." Cook v. Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004) (emphasis added); Zhou v. Zhou, 38 Va. App. 126, 136, 562 S.E.2d 336, 340 (2002) (observing that "basic canons of statutory construction" exclude interpretations rendering statutory language "superfluous"). The question, then, is whether it is possible to do so in this case. I think so.

The majority opinion interprets the word "exposure" to mean nudity and "display" to mean nothing more. The disjunctive thus becomes a redundant conjunctive. No Virginia case has ever interpreted this statute in this manner. And for good reason: Unless the word "display" is superfluous, it must mean something different from "exposure." If "exposure" can only mean some degree of nudity, then "display" necessarily means something different. And so it does. Among the definitions of "display" in ordinary speech (particularly where, as here, it is used as a noun rather than a verb) is the "demonstration or manifestation of something." American

- 16 -

Heritage Dictionary 407 (2d coll. ed. 1985).[13]  It is just that definition we give to the word

"display" when used in other provisions of the Virginia Code.

For example, Code § 18.2-53.1 criminalizes the "display" of a firearm while committing

a felony.  A robber can effectively "display" a firearm in his pocket even though completely

hidden from view.  Cromite v. Commonwealth, 3 Va. App. 64, 67, 348 S.E.2d 38, 40 (1986).

The word "display" means "not only the notion of spreading before view or exhibiting to the

sight, but also that which is manifested to any of a victim's senses . . . ."  Id. (quoting State v.

Smallwood, 346 A.2d 164, 167 (Del. 1975)).  "Thus a weapon may be manifested to a victim

even though he may not see it" because the ability to otherwise discern the weapon's presence

itself is a manifestation "just as effective, for the statutory purpose, as putting a gun in plain

view."  Id.; see also Deshields v. State, 706 A.2d 502, 507 (Del. 1998) (finding that robber

"displays" a weapon by putting his hand in his pocket and then handling the weapon); People v.

Butts, 580 N.Y.S.2d 758, 758 (N.Y. App. Div. 1992) (holding that robber displays a weapon by

putting his hand inside his jacket and asking victim if it would "make a difference" if he had a

gun).[14]

The majority finds none of this persuasive, concluding instead that the meaning of

"display" has been foreclosed by prior Virginia cases.  The three Virginia cases cited by the

majority, however, do not mention or discuss the word "display" as used in Code § 18.2-387.

---

[13] This point demonstrates the irrelevance of State v. Jaime, 236 A.2d 474, 475 (Conn. App. 1967), and State v. Wymore, 560 P.2d 868, 869-70 (Idaho 1977), cited by the majority. *Ante* at 8.  The indecency laws in both cases only make it unlawful to "expose" the person or private parts.  Neither statute goes further and criminalizes the "display" of the person or private parts, as does Code § 18.2-387.

[14] I see nothing "anomalous" or "absurd," *ante* at 5-6, about the General Assembly using the "so expose" phrase in the procurement portion of Code § 18.2-387.  Nor do I understand how this phrase empties the word "display" of any substantive meaning, leaving it legally immaterial that it is even in the statute.

See, e.g., Wicks, 215 Va. at 276, 208 S.E.2d at 754 (interpreting local ordinance stating that no "person shall indecently *expose* himself" (emphasis added)); Noblett v. Commonwealth, 194 Va. 241, 72 S.E.2d 241 (1952) (affirming a conviction on an indictment alleging that the defendant *exposed* himself); Siquina, 28 Va. App. at 697-99, 508 S.E.2d at 352-53 (interpreting the indecent liberties statute, which forbids *exposing* one's sexual or genital parts to a child). They instead focus entirely on the meaning of "expose."

Under Virginia law, *stare decisi*s does not "foreclose inquiry" into an issue not previously "raised, discussed, or decided." Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 560, 554 S.E.2d 55, 59 (2001); see also Finnerty v. Thorton Hall, Inc., 42 Va. App. 628, 639-40, 593 S.E.2d 568, 574 (2004). The majority's holding, therefore, cannot be justified as a necessary application of settled precedent.

Even so, I see a deeper problem with the majority's singular focus on cases interpreting the word "expose." From a logical point of view, the entire discussion begs the question. Every visible *exposure* of one's genitals will necessarily involve a *display* of one's genitals. The former concept, by definition, subsumes the latter. (That's why Black's Law Dictionary defines "exposure" to include "display." *Ante* at 4.) But that does not prove the reverse: that every *display* necessarily includes an *exposure*. Hence, a robber can still display a handgun in his pocket while not exposing it to sight. (Which explains why Black's Law Dictionary nowhere defines "display" to include "exposure.") This *non sequitur* permeates the majority's reasoning. And it was just this misunderstanding, I believe, the General Assembly sought to avoid by conspicuously using the disjunctive "display *or* exposure" formulation in Code § 18.2-387.

Finally, the majority opinion contains a curious caveat. The opinion's *ratio decidendi* collapses together the words display and exposure, treating them as exact synonyms. But in *dicta* the majority says it "need not" decide whether its interpretation of Code § 18.2-387 would

- 18 -

criminalize non-nudity in cases where the "outline" of the penis could be discerned underneath the defendant's clothing. *Ante* at 3 n.2 & 6 n.5 (cross-referencing n.2). This caveat attempts to keep alive the remark in <u>Hart</u>, 18 Va. App. at 78, 441 S.E.2d at 706, which found legal significance in the fact that the "outline" of the defendant's penis could be discerned underneath his clothing.

I do not think the majority can have it both ways. If display means exposure, and exposure means some degree of nudity, then a masturbator who keeps his pants on cannot be convicted as a matter of law — no matter how much his penis distorts the outer contours of his clothing. I thus do not understand how it can be said by my colleagues that they "need not" decide this point. *Ante* at 3 n.2. It seems to me they already did.

The majority apparently believes, however, its interpretation of the statute would not necessarily foreclose a conviction in this case if the two girls had simply said they could discern the "outline" of the defendant's penis underneath his clothing. If so, I do not see any principled basis to draw the line there. If the statute applies to a victim seeing the "outline" of the defendant's penis through his clothes, it should be no less objectionable that the victim similarly sees the outline of the defendant's hand masturbating his non-outlined penis. The visual assault in the latter scenario is arguably more obscene than in the former.

III.

Sitting as factfinder, the trial judge found the defendant's public masturbation to be an "obscene display or exposure" of his "person, or the private parts thereof" in violation of Code § 18.2-387. The issue on appeal is whether "*any* rational trier of fact" could have come to this conclusion. <u>Seaton v. Commonwealth</u>, 42 Va. App. 739, 747, 595 S.E.2d 9, 13 (2004) (emphasis in original and citations omitted). The question answers itself. To be sure, I can think of few

- 19 -

things more obscene than a pedophile masturbating in front of a young child as he tries to talk

her into being his next victim.

I respectfully dissent.